**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL ACHTERBERG,<br><br>Plaintiff,<br><br>v.<br><br>XILINX, INC., DENNIS SEGERS, VICTOR PENG, RAMAN CHITKARA, SAAR GILLAI, RONALD S. JANKOV, MARY LOUISE (ML) KRAKAUER, THOMAS H. LEE, JON A. OLSON, and ELIZABETH VANDERSLICE,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Achterberg ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Xilinx, Inc. ("Xilinx" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Xilinx and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Xilinx and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Advanced Micro Devices, Inc. ("AMD") and Thrones Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of AMD (the "Proposed Transaction").

2. On October 27, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with AMD. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive 1.7234 shares of AMD common stock for each share of Xilinx common stock owned (the "Merger Consideration").

3. On December 4, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Xilinx and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Xilinx shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Xilinx shares.

9. Defendant Xilinx is incorporated under the laws of Delaware and has its principal executive offices located at 2100 Logic Drive, San Jose, California 95124. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "XLNX."

10. Defendant Dennis Segers ("Segers") is and has been a director of Xilinx at all times during the relevant time period.

11. Defendant Victor Peng ("Peng") is and has been the Company's Chief Executive Officer and a director of Xilinx at all times during the relevant time period.

12. Defendant Raman Chitkara ("Chitkara") is and has been a director of Xilinx at all times during the relevant time period.

13. Defendant Saar Gillai ("Gillai") is and has been a director of Xilinx at all times during the relevant time period.

14. Defendant Ronald S. Jankov ("Jankov") is and has been a director of Xilinx at all times during the relevant time period.

15. Defendant Mary Louise Krakauer ("Krakauer") is and has been a director of Xilinx at all times during the relevant time period.

16. Defendant Thomas H. Lee ("Lee") is and has been a director of Xilinx at all times during the relevant time period.

17. Defendant Jon A. Olson ("Olson") is and has been a director of Xilinx at all times during the relevant time period.

18. Defendant Elizabeth Vanderslice ("Vanderslice") is and has been a director of Xilinx at all times during the relevant time period.

19. Defendants Segers, Peng, Chitkara, Gillai, Jankov, Krakauer, Lee, Olson, and Vanderslice are collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants, along with Defendant Xilinx, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21. Xilinx designs and develops programmable devices and associated technologies, including integrated circuits (ICs) in the form of programmable logic devices (PLDs), including programmable System on Chips (SoCs), three-dimensional ICs (3D ICs) and Adaptive Compute Acceleration Platform (ACAP): a highly integrated multi-core heterogeneous compute platform; software design tools to program the PLDs; software development environments and embedded

platforms; targeted reference designs; printed circuit boards; and intellectual property (IP), which consists of Xilinx and various third-party verification and IP cores. In addition to its programmable platforms, Xilinx provides design services, customer training, field engineering and technical support.

**The Company Announces the Proposed Transaction**

22. On October 27, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> **SILICON VALLEY, CALIF. — Oct. 27, 2020 —** AMD (NASDAQ: AMD) and Xilinx (NASDAQ: XLNX) today announced they have entered into a definitive agreement for AMD to acquire Xilinx in an all-stock transaction valued at $35 billion. The combination will create the industry's leading high performance computing company, significantly expanding the breadth of AMD's product portfolio and customer set across diverse growth markets where Xilinx is an established leader. The transaction is expected to be immediately accretive to AMD margins, EPS and free cash flow generation and deliver industry-leading growth.
>
> The acquisition brings together two industry leaders with complementary product portfolios and customers. AMD will offer the industry's strongest portfolio of high performance processor technologies, combining CPUs, GPUs, FPGAs, Adaptive SoCs and deep software expertise to enable leadership computing platforms for cloud, edge and end devices. Together, the combined company will capitalize on opportunities spanning some of the industry's most important growth segments from the data center to gaming, PCs, communications, automotive, industrial, aerospace and defense.
>
> "Our acquisition of Xilinx marks the next leg in our journey to establish AMD as the industry's high performance computing leader and partner of choice for the largest and most important technology companies in the world," AMD President and CEO Dr. Lisa Su said. "This is truly a compelling combination that will create significant value for all stakeholders, including AMD and Xilinx shareholders who will benefit from the future growth and upside potential of the combined company. The Xilinx team is one of the strongest in the industry and we are thrilled to welcome them to the AMD family. By combining our world-class engineering teams and deep domain expertise, we will create an industry leader with the vision, talent and scale to define the future of high performance computing."

"We are excited to join the AMD family. Our shared cultures of innovation, excellence and collaboration make this an ideal combination. Together, we will lead the new era of high performance and adaptive computing," said Victor Peng, Xilinx president and CEO. "Our leading FPGAs, Adaptive SoCs, accelerator and SmartNIC solutions enable innovation from the cloud, to the edge and end devices. We empower our customers to deploy differentiated platforms to market faster, and with optimal efficiency and performance. Joining together with AMD will help accelerate growth in our data center business and enable us to pursue a broader customer base across more markets."

With a combined team of 13,000 talented engineers and over $2.7 billion of annual[1] R&D investment, AMD will have additional talent and scale to deliver an even stronger set of products and domain-specific solutions.

**Additional Transaction Details**

Under the terms of the agreement, Xilinx stockholders will receive a fixed exchange ratio of 1.7234 shares of AMD common stock for each share of Xilinx common stock they hold at the closing of the transaction. Based on the exchange ratio, this represents approximately $143 per share of Xilinx common stock[2]. Post-closing, current AMD stockholders will own approximately 74 percent of the combined company on a fully diluted basis, while Xilinx stockholders will own approximately 26 percent. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

AMD expects to achieve operational efficiencies of approximately $300 million within 18 months of closing the transaction, primarily based on synergies in costs of goods sold, shared infrastructure and through streamlining common areas.

The transaction has been unanimously approved by the AMD and Xilinx Boards of Directors. The acquisition is subject to approval by AMD and Xilinx shareholders, certain regulatory approvals and other customary closing conditions. The transaction is currently expected to close by the end of calendar year 2021. Until close, the parties remain separate, independent companies.

**Management and Board of Directors**

Dr. Lisa Su will lead the combined company as CEO. Xilinx President and CEO, Victor Peng, will join AMD as president responsible for the Xilinx business and strategic growth initiatives, effective upon closing of the transaction. In addition, at least two Xilinx directors will join the AMD Board of Directors upon closing.

**Advisors**

Credit Suisse and DBO Partners are acting as financial advisors to AMD and Latham & Watkins, LLC is serving as its legal advisor. Morgan Stanley is acting

as lead financial advisor to Xilinx. BofA Securities is also acting as a financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel.

**FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT**

23. On December 4, 2020, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections**

25. The Registration Statement contains projections prepared by the Company's and AMD's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27. In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Adjusted EPS; and (iii) Unlevered Free Cash Flow.

29. With respect to the AMD Projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Adjusted EPS; and (iii) Unlevered Free Cash Flow.

30. With respect to the AMD Adjusted Xilinx Projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA unburdened by SBC; (ii) Adjusted EBITDA burdened by SBC; (iii) Adjusted EPS unburdened by SBC; (iv) Adjusted EPS burdened by SBC; and (v) Unlevered Free Cash Flow.

---

http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

31. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Morgan Stanley's Financial Opinion**

32. The Registration Statement contains the financial analyses and opinion of Morgan Stanley & Co. LLC ("Morgan Stanley") concerning the Proposed Transaction, but fails to provide material information concerning such.

33. With respect to Morgan Stanley's *Relative Discounted Cash Flow Analysis* the Registration Statement fails to disclose: (i) all line items underlying the stand-alone unlevered after-tax free cash flows; (ii) the terminal values of both companies; (iii) the inputs and assumptions underlying the terminal EBITDA multiples ranging from 11.0x to 15.0x; (iv) the inputs and assumptions underlying the discount rates ranging from 8.3% to 10.3% for AMD; (v) the inputs and assumptions underlying the discount rates ranging from 6.8% to 7.8% for Xilinx; and (vi) the net debt of AMD and Xilinx.

34. With respect to Morgan Stanley's *Relative Discounted Equity Value Analysis*, the Registration Statement fails to disclose: (i) the line items underlying AMD and Xilnix's earnings per share utilized by Morgan Stanley for its analysis; (ii) the inputs and assumptions underlying the discount rate of 9.3% for AMD; and (iii) the inputs and assumptions underlying the discount rate of 6.8% for Xilinx.

35. With respect to Morgan Stanley's *Relative Public Trading Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analyses.

36. With respect to Morgan Stanley's *Precedent Premia Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each transaction observed in the analyses.

37. With respect to Morgan Stanley's *Relative Equity Research Analysts' Future Price Targets*, the Registration Statement fails to disclose the individual price targets observed, as well as the sources thereof.

**Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding BofA's Financial Opinion**

38. The Registration Statement contains the financial analyses and opinion of BofA Securities, Inc. ("BofA") concerning the Proposed Transaction, but fails to provide material information concerning such.

39. With respect to BofA's *Discounted Cash Flow Analysis* for both Xilinx and AMD, the Registration Statement fails to disclose: (i) the line items underlying the standalone unlevered, after-tax free cash flows that Xilinx was forecasted to generate during Xilinx's third and fourth quarters of fiscal year 2021 and fiscal years 2022 through fiscal year 2032; (ii) all line items underlying the standalone unlevered, after-tax free cash flows that AMD was forecasted to generate during AMD's fourth quarter of fiscal year 2020 and fiscal years 2021 through 2031; (iii) the terminal values for Xilinx and AMD; (iv) the inputs and assumptions underlying the perpetuity growth rates of 2.75% to 3.25%; (v) the inputs and assumptions underlying the perpetuity growth rates of 3.50% to 4.00%, and (vi) the inputs and assumptions underlying the discount rates ranging from 6.5% to 8.5% and from 8.50% to 10.50%.

40. With respect to BofA's *Selected Publicly Traded Companies Analysis* for both Xilinx and AMD, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analyses.

41. With respect to BofA's *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each transaction observed in the analyses.

42. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

43. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

48. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

49. The Defendants knew or were negligent in not knowing that the Registration

Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

50. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

52. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Xilinx within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Xilinx, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

58. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 18, 2020

Respectfully submitted,

By: *_/s/ Joshua M. Lifshitz_*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*